All right, next up is 24-7047 and 24-7062, United States v. Reilly slash Peebler, counsel. May it please the court. Stuart Sutherland, Public Defender's Office for the Eastern District of Oklahoma, representing not just Mr. Reilly but also Mr. James Peebler. I didn't realize until I actually came into Denver that the preceding case would cover at least some of my arguments, so I'll try to start out. What about that? If this panel or another panel were to rule that 922N were constitutional, is that the end of your appeals? Very well meant. I mean, I have to be real honest there. I think that the more difficult argument is tying in A6 with N, but the other way around, if N is facially constitutional, I think that unless there is an unconstitutional as-applied challenge or something that could be raised under A6, I believe that that argument is in trouble. Would you have an as-applied theory here? I think there are a couple of ways that we can look at as-applied. I mean, I think what's kind of interesting in this case, there was some talk of indictments in the court, and these didn't involve indictments. These involve state court informations, and in Oklahoma, informations are filed simply by a district attorney, elected official. He just signs a piece of paper alleging that a crime has been committed. There is no probable cause determination or anything like that when the charge is initially filed, and that's the way both of these cases came to be. Both of these were filed without any kind of procedural due process or any determination in any way. In fact, if there was a determination, it was actually probably in their favor. Both of these gentlemen, as is necessarily the case, were out on bail. I think one of them was, in fact, granted a PR bond. Another one was posted bond, and of course, I don't have any record of the determination that the judge made, but we can assume at least that the judge didn't make a determination that either of these gentlemen were either a flight risk or a danger to the community. Arguably, their crimes were nonviolent. There's a drug distribution and a straw purchase. It's certainly just by the nature of the crime. I mean, all that's required for the drug distribution charge is that somebody, in fact, doesn't need to be a drug dealer, could be somebody that simply delivered a controlled dangerous substance to another person. There's nothing necessarily dangerous about that act. The problem, the different problem, I guess, in this case, is that I think both of the district courts essentially kind of took an off-ramp, an early off-ramp on the constitutional analysis because these gentlemen were charged under 922A6. This gave the judges the ability to just essentially, I think, although the arguments were a little bit different, the rulings were a little bit different, I think they both revolved around this kind of nucleus of there's no constitutional right to lie. And they certainly cited cases for that notion, not necessarily gun cases, but cases that stated that there was no constitutional right to lie. And whether this statement is true or not, the analysis must still begin with the actual language of 922A6. And this is a crime that makes it a crime to make a false statement in the attempted acquisition of a farm from a licensed dealer with respect to any act which is material to the lawfulness of the farm. And that's where your 922N argument comes in, even though it wasn't stated by statute name. And unlike, I think, just about every other jurisdiction I looked at, the Eastern District just charges the A6. They don't charge A6NN. They just charge the A6. The form also has a partly informational gathering function, it seems to me, and that the government could legitimately want to know if indicted persons, people out on bail, are seeking to acquire a firearm. And so even if 922N were unconstitutional as applied to some of these persons, the government could still ask on a form what your status is. And that would be A6. And that could be a crime regardless of the underlying constitutionality of 922N. Well, I mean, while they can certainly ask that, the interesting thing, another interesting thing is that irrespective of the answer that these gentlemen gave on the form, neither one of them received a firearm. And I think that's because fundamental to this 4473, if I'm remembering that right, the 4473 ATF form, is that it is designed to collect biographical information about a person, social security numbers, addresses, names, things that in this day and age make it fairly easy to determine, you know, whether a person is qualified to have a firearm. It still runs through, I think, historically kind of the 922 things that would prohibit a person from having a firearm. But I think that in this particular case, 922N or D1, the flip side of the coin, dealing with a person who's simply been charged with a crime, would run afoul of the Constitution. Well, assume for a second, just for fun, that there's no such thing as a 922N, but that the ATF form 4473 still contains the question, 21D, about are you under indictment? And your client says, no, I'm not under indictment, when in fact he was. Would that qualify as a violation of A6? And if not, why not? Well, I don't think so, because I think then it would become more difficult to argue why would that be Okay. And so let me ask you this. With respect to that, the only case that I've really seen that I wonder about on that point is the United States v. Sheet from the Seventh Circuit, where the court affirmed an A6 conviction where the applicant had given a false address. And there's no crime that says you have to, if you give a false address, then you've committed a crime. But still, the court said that's the sort of information that is material to the lawfulness, even though there's not an underlying crime. And so it's broader than that. It's broader than whether 922N exists. Is it something that's helpful in determining whether you're someone who should have a firearm? And so is it a big step to go from this false address situation to an under indictment without a 922N? Sorry, that's a long question. And I'm going to have to take you back. I don't know that I came across that case. What was the name of the case, the Seventh Circuit case? The name of the case is the United States v. Sheet, S-E-H-E-I-D-T-103-F-4-12-81. And the only point that I'm raising with that case is that it's a conviction under A-6 for providing a false address. And there's no crime like 922 analog to say, if you give a false address, you do 10 years. In other words, you can ask questions that are beyond the criminal code. And I had exactly the same thought as I was reviewing this. I tried to think of all the questions that you are going to ask. The case that I stumbled upon was Imbransky. Imbransky, if I'm pronouncing that correctly. I don't have a citation right here in my notes, but that's a Supreme Court case. And what I thought was interesting about that case is that it involved a person who had purchased a firearm, but not for himself. He had purchased a firearm for another person. And his argument that he didn't violate the law was that other person was not a prohibited person. This gentleman, I think the idea was that he was an ex-police officer and he thought by flashing his police identification, he could get a discount or something on the gun. And the person who actually purchased the gun, I mean, actually had evidence that this person had given a check to Mr. Imbransky and that he had gone to the licensed firearm dealer and procured the gun for another person. I don't know how that really helps, because in that instance, there is a crime, straw purchase. Well, but the argument, I think, that he raised is why it's relevant, because he said that it's not relevant. Because there was basically no harm, no foul here. So although technically it was a violation, you know, for example, it wouldn't have been a violation if he had purchased the gun to give it to another person as a gift. Well, let me circle around and ask it this way. Okay. I don't mean to take up all your time, but I want to get an answer on this. That's fine. Which is, if there were no 922N, you're saying that ATF could not ask the question, are you under indictment, and then prosecute if you lie about that. Is that right? And if so, based on what? Could they ask the question? I don't know. I haven't really thought about it. I mean, there's all kinds of questions that they could ask that wouldn't necessarily violate 922A6, I suppose, is my thought, is because it wouldn't be material. And prosecute, I said. Yes. Yeah. Why can't they? Why can't they? I'm looking for a limiting principle from you. You can't ask certain things and then prosecute, and under indictment being one of them. Address, yes. Under indictment, no. Well, I feel like that we're broadening the language of the statute to a false answer to a question. You know, if a false answer to a question, which certainly I think that there are, I think the government's entitled to do that. I think they could probably prosecute you for a false answer to a question, but that's not what 922A6 prohibits. Well, is an address, is giving a false address a fact material to the lawfulness of the sale? I think that's where I was going with Ambramsky. Ambramsky was a 5-4 Supreme Court decision, and it was close, but ultimately they determined that these biographical information, name, address, Social Security number, these kind of things are core to the responsibility of the firearm dealer to do his job. And therefore, it would be material in that regard as to his ability to determine, and to do a records check. How do you do a records check if you don't know who you're selling the gun to? That was ultimately, I think, the Ambramsky conclusion is, how do you do your job if you don't know who you're selling the gun to? With your example, I just, I don't see how, I mean, the address might be material, you know, under Ambramsky for collecting that information, but it wouldn't be material. It's material so you can investigate, right? Right. Yeah, I think that's probably the idea. And isn't under indictment the same thing? Well, I mean, I think that's what Holden kind of said, is that, you know, even if this isn't directly material, even if the 922, as we postulated, even if there was no 922N, still, by answering that question falsely, it could lead to the discovery of relevant information. I mean, I disagree with Holden. I don't want you to follow Holden. But I think that if you did, if you went down that path, you could come to the same conclusion. But that's not what the statute says. I mean, it says material to the lawfulness, not could lead to the discovery of relevant information. But is that information material to the lawfulness of the transfer? And material to the lawfulness, that requires a 922 criminal violation of some sort by your time. Well, it certainly, you know, we talked a little bit about as applied. It's certainly exactly what was alleged in this case. It's interesting because the indictments in this case didn't mention 922N. They didn't mention 922D1. But there can be no doubt from reading the indictment that that was the specific thing that was alleged in this case. That was the material lawful violation. Aren't you just, aren't you basically conceding that you don't meet the first, you don't meet the first step of Bruin? I mean, the conduct that's alleged here is basically just information gathering for a form. It's information that they're entitled to, the government is entitled to. So the conduct isn't protected by the Second Amendment. Don't you just fail right there at the first step if we get to that point? I mean, that's certainly what Judge Heil believed, is that, you know, he didn't even have to address that first step. Because he believed the conduct to be simply the lie. I would say that that's more of an element of an offense would be the lie. I would say the conduct, I mean, we just have to take one step back here and see what were these gentlemen trying to do? What was the conduct that they were trying to do? This was an attempt to acquire and to possess a firearm. So I would say, yes, we do get to the first step of Bruin, because I believe that's the conduct. That's the underlying act. I mean, that's the conduct. It doesn't have to do with the element of the offense in 922A6, but these are attempts to acquire a firearm. Shouldn't the, what should have happened here was your clients should have truthfully answered the form, and then challenged 922N in a declaratory judgment or a separate action, right? And that's ideal. I mean, once again, if we step back and think what would have been the best way to handle this, in retrospect, that probably would have been a better way to handle it. You're collaterally attacking a statute for which you weren't convicted of. He's in a position where he wants to get a firearm. In fact, in one of these cases, it was his own firearm that he had previously pawned. He was just trying to get his firearm back. And I can't imagine how long a declaratory action would take. I can't imagine how much it would cost. I just think that was in the realm of practical possibilities for either of these gentlemen to do it. Theoretically, yes. Practically, no. All right. Thank you. Thank you, Kelsey. Good morning, Your Honors. Lisa Williams representing the United States of America. I was going to start by noting that the court may not reach the issue of the constitutionality of 922-N. But I see from the preceding argument that the court will be reaching that issue, regardless of the outcome of this case. If this court does determine that 922-N is constitutional, that ends the inquiry in this case. You don't need to address at that point, because 922-N is constitutional, the ATF forms question about whether or not Mr. Peveler or Riley were under indictment is material. And then you cannot defend against materiality with a lie. However, in this case, you don't need to reach the underlying issue of the 922-N. If we found that 922-N was facially constitutional, wouldn't these two gentlemen still have an as-applied challenge based on the underlying conduct that they were accused of? No, Your Honor. I know both defendants argue that they bring as-applied challenges. But those as-applied challenges haven't been properly preserved or raised before the district court, because they are attacking this statute in every single application. An as-applied challenge here would look something like one of two things. One, what counsel argued just a few minutes ago, oh, in Oklahoma it doesn't require a grand jury, it's just a signature by a DA. But none of those facts were developed in the record either through trial or stipulation with the government. And so there's no way to judge whether or not that's accurate, or it's just simply not preserved. The other way to bring an as-applied challenge would say, oh, well, I'm under indictment for antitrust. And that type of crime is not historically analogous to the types of crimes that disbarred people in the founding era. And so because of that, as applied to me, well, yes, if somebody is under indictment for murder, you should not let them go acquire new firearms. But antitrust is different. But again, we don't have sufficient facts developed through trial or stipulation to preserve the as-applied challenge here. And so the government's position is that's been waived. And what's really before the court is simply the facial challenge to the statute. Well, what facts would we need? Aren't the facts that we would need in the indictment? Well, for the facial challenge, yes, Your Honor. But that's, in fact... Well, why not for the applied too? Well, because, and that's the Pope case that the government cited in its brief, which suggested that a 12B motion isn't the proper venue or method to bring an as-applied challenge because a 12B motion to dismiss only looks at the four corners of the indictment. And is there a, are there bare facts legally sufficient to have the indictment survive? Whereas an as-applied challenge doesn't actually attack the underlying law, right, in every single application. It says it's just as applied to me and my specific facts of the case. Well, those specific facts of the case do not and are not contained in the indictment. Here's what you're indicted for. Correct. Lying on the 4473. Well, you're indicted for a certain crime. We know what it was, right? District Court knew what it was. You mean the underlying state charge that prohibited him from assessing? Yes, that is also included. Yes, that's correct. Well, you don't do an exhaustive inventory of the defendant's whole life in doing an as-applied, do you? Don't you look at what the charge is, the state charge? Well, but you also have to look, again, when counsel stands up and says in Oklahoma the district attorney can obtain an indictment just with his signature and there's no grand jury presentment, those facts aren't in the indictment. Those are facts that need to be developed if you want to, as applied, attack this statute. All right. Let me ask you, I guess, the opposite question I ask opposing counsel, which is what if this court, this panel or another panel were to say that 922N is unconstitutional? Where does that leave you? That still is not enough to reverse the district court in this case because the constitutionality of 922N does not determine the materiality requirement of the information collected by the 4473. Well, you have to admit that if you have a 922N, the materiality of the lawfulness is a lot more evident. I absolutely agree with that, Your Honor. And without 922N, then you're relying just on having lies on the form, right? Well, I still don't, I think it's lying on the form about something that's material. Well, material, I mean, we can debate that. But I guess here's what I want to ask you about. Is this form, we have question 21D, which asks, are you under indictment? And then Judge Easterbrook will say, you can investigate. You can find out more and learn whether this is a shady character who shouldn't get a gun by asking that question. In other words, it has value apart from 922N. Here's my criticism or problem with that, that maybe you can help me with. Is as you go through this form and then you go back to what the instructions are and it tells you why it's asking that question, everything is tied to 922N with hoops of steel. In other words, there's nothing in this ATF form that suggests ATF would have even asked that question except for 922N. And so if it's stricken, why don't we just say we don't know for sure whether ATF even cared about that? They can tell us by doing a new form. So I agree with that chain of inquiry, that the form makes clear that the question is there because of 922N. I think the problem in this case then is you still don't get to lie and defend your lie by saying the government wasn't allowed to ask that question. What is the limit on that? Is there any limit that ATF can ask any question it wants and if you tell a lie, then off you go to the federal prison? Yes, Your Honor. When you look at the Supreme Court case law, they have routinely rejected for decades anyone's lie in a whole variety of situations. You don't get to lie to the government to defend against something that you think is improper. Any lie whatsoever to any question on any government form is material to the lawfulness of the sale. If it asks, is your favorite team the Los Angeles Dodgers? And you put yes. And in fact, everybody knows your wardrobe is all Cincinnati Reds. I think the way to challenge that, though, is not through lying on the form. It's through filing a civil suit saying you have no right to ask this information. Okay, but you don't go that far with any question that you lie on gets you a federal prison ticket. Do you or do you? Well, I just it's it's hard to engage in that hypothetical, because, of course, at the same time, the government would never collect that. I mean, I know that we're trying to we're trying to draw lines, but you're saying every every lie is material. I mean, you're that's well, I guess his hypothetical is clearly and I would I want to push back. I don't want to say every lie is material, nor is necessarily every question material. What the government's position is, you cannot challenge the materiality of a question by lying. So what if it said, tell us what neighborhood you grew up in? Because we have statistics that show if you grew up in this side of town, you're more likely to commit a crime and we'd want to investigate you further. And you say, I grew up on the big castle side of town, which is untrue. You would say that is material of lawfulness. I'm not sure that the government's position is that it's a material. First of all, you can decline to answer. And then at that point, maybe you still get your firearm. And if so, then that question is not material to the sale. Because, again, materiality is judged by whether or not the sale would go forward. It's not by the underlying constitutionality of the questions that are being asked. So the but what I return to is the proper way to challenge whether or not a question or an issue is material is not by lying. And that's what the Supreme Court has said. There could be a whole wide range of absurd questions asked on the ATF 4473. And regardless of what those questions are, if you think that they are improper, you can decline to answer or you can answer truthfully and see if the sale proceeds. But there is no protected right to lie. Can't you defend yourself on the materiality aspect? I mean, I'm indicted for an immaterial lie. Yes, I lied, but it wasn't material. I think through a trial you could. I mean, I think that whether or not the information is material could be a question of fact for a jury to resolve. Yes, Your Honor. Absolutely. That would be a way to do it here. But again, that's not what happened in the underlying case because and again, that's Knox. That's the 1969 Supreme Court case. A person who gives false information to government in feigned compliance with the statutory requirement cannot defend against the prosecution by challenging the validity of the requirement itself. So you cannot defend against lying on the 4473 by challenging the validity of the question being asked. I do want to circle back to one thing. I don't think it's going to be dispositive in this case, but there was some talk about the underlying crimes that both of these defendants were indicted for and whether or not they were crimes of violence. And I do just want to point out that they were drug crimes, but there was also a secondary carrying of a firearm in connection with a felony. And again, we don't know enough about the facts because they weren't developed. But if that felony was the drug crime and they were carrying a firearm during the drug crime that they were also charged with, that sounds very similar to our 924C, which can be a crime of violence. And so I don't want to concede that somehow these are nonviolent offenses that these defendants were. Again, I don't think that that's dispositive to this case, but I did just want to note that the government didn't concede with that. I would also note that the 922N argument that the government is raising, the how and the why, it seems that it's a little bit broader than in the case from Utah before us. The government has put forth a few different whys from the historical record that's other than just public safety. And these were all recognized in either Gore, Quirez, or Perez-Garcia. And I understand that Perez-Garcia is a 3142 case, not a 922N case, but I think it's still very analogous and on point as the issues were the same. But obtaining a firearm after indictment might give rise to an inference that the defendant has a nefarious intentions towards a witness or a victim. And I think that's interesting because it ties into the materiality of the question on the form, which is the A6 argument. One of the reasons, even if 922N didn't exist, that the government may still want to keep that question on the form is to say, hey, we have an interest in knowing who is obtaining firearms after they've been charged with a crime. That may be really important information for the government to know, for witnesses to know, for victims to know, for the judge or the court staff to know. There's a history and tradition that if you've been charged with a crime and then you go out and obtain a firearm, there may be something nefarious going on and dangerous that the government has a right to know about. And so I understand that the 4473 doesn't speak in those terms as to the reason about asking it. I think that it would still be a valid question to ask. But you seem to me to jump the fence there. We're supposed to be talking about what's material to the lawfulness of the sale, not material to this is something you might want to know about for some reason beyond the lawfulness of the sale. So the materialness, the lawfulness of the sale is whether or not the sale could proceed, given the information provided. And it could. And just because the explanation is on the form, I don't think that limits the government's interest in collecting that information to only the expressed interest on the form. I do think that the government is entitled to have broader interests that it didn't necessarily lay out in the fine print on the 4473. But it's got to abide that language. You can't skip past material to the lawfulness of the sale. Correct. And then the next part of that is, so would the sale have proceeded? Again, it's not judged by the Constitution. And I see that I'm out of time. It's not judged by the constitutionality of the underlying statute that the question is necessarily based on. It's whether or not the sale, and that's the Abrahamsky case, I just butchered that, from the Supreme Court. It's whether or not the sale would proceed without it. And if you leave that question blank and the sale doesn't proceed, then it is material. But if the government is asking that question just because it's curious, and you leave the question blank and the dealer gives you the firearm anyway, then the question wouldn't necessarily be material, because the sale would proceed without it. All right, counsel, I think your time has expired. There's some rebuttal time. Could you give him a minute, please, Kevin? I'll try to just address two points. One, with regard to that no constitutional right to lie, I read a bunch of cases dealing with that, and I kind of narrowed it down to a couple of different classifications. One, if you're asserting a constitutional right against self-incrimination, I think clearly the remedy there is to not answer the question, to not incriminate yourself. And there was a whole other group of cases dealing with fraud, people that essentially defrauded the government. And the Supreme Court, the appellate courts, were very concerned with this idea that you could somehow say, well, I can defraud the government as much as I want, because, you know, this law, this establishment of this banking association was unconstitutional, and they didn't like that either. So that seems to be either where that language comes from, those particular cases, or it goes back to those particular cases. I was ready for somebody to ask me what my best case was, and nobody did. But I'm going to say Rahimi, even though Rahimi is often used as a sword, it's also a shield, and that's because the court ruling. If we look at the ruling, we conclude only this, an individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed. And that's it. That's the ruling. Thank you. Thank you.